UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PATRICIA ANNELLA,<br><br>            Plaintiff,<br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner, Social Security<br>Administration,<br><br>            Defendant. | No. EDCV 03-01140 CW<br><br>DECISION AND ORDER |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge. Plaintiff seeks review of the denial of disability benefits. The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

### I. BACKGROUND

Plaintiff Patricia Annella was born on June 15, 1955, and was forty-eight years old at the time of her administrative hearing. [Administrative Record ("AR") 22, 69.] She has a ninth grade education and past relevant work experience as a bartender. [AR 17.]

Plaintiff claims disability on the basis of severe degenerative disc disease, advanced and progressive osteoarthritis and depression. [AR 14.]

## II.  PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on October 3, 2003, and filed on October 9, 2003.  On February 18, 2004, defendant filed plaintiff's Administrative Record ("AR").  On June 3, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.  PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits and supplemental security income on August 14, 2001, alleging disability since August 8, 2001. [AR 14.]  An administrative hearing was held on June 24, 2003, before Administrative Law Judge ("ALJ") F. Keith Varni. [Transcript, AR 20.]  Plaintiff appeared with counsel, Bill LaTour, and testimony was taken from plaintiff and vocational expert Corrine J. Porter. [Id.]  The ALJ denied benefits on July 23, 2003. [Decision, AR 19.]  When the Appeals Council denied review on September 24, 2003, the ALJ's decision became the Commissioner's final decision.  [AR 5.]

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not

supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1147 (9th Cir. 2001); <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir.  2001); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996); <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id</u>.  To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Id</u>.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-721; see also <u>Osenbrock</u>, 240 F.3d at 1162.

### V.   DISCUSSION

#### A.   THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial

1  gainful activity?  If so, the claimant is found not
   disabled.  If not, proceed to step two.
2       Step two: Does the claimant have a "severe" impairment?
   If so, proceed to step three.  If not, then a finding of not
3  disabled is appropriate.
     Step three: Does the claimant's impairment or
4  combination of impairments meet or equal an impairment
   listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
5  so, the claimant is automatically determined disabled.  If
   not, proceed to step four.
6       Step four: Is the claimant capable of performing his
   past work?  If so, the claimant is not disabled.  If not,
7  proceed to step five.
     Step five: Does the claimant have the residual
8  functional capacity to perform any other work?  If so, the
   claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since the onset date of August 8, 2001 (step one), that plaintiff had "severe" impairments, namely degenerative changes of the cervical and lumbar spine and depression (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 14, 18.] The ALJ found that plaintiff did not have the RFC to perform her past relevant work as a bartender (step four) but did have the RFC to perform a significant range of light work available in the economy (step five). [AR 18.] Accordingly, the ALJ found that plaintiff was not "disabled" as defined by the Social Security Act. [Id.]

### C.   PLAINTIFF'S PRESENT CLAIMS

Plaintiff challenges the ALJ's decision by arguing that the ALJ failed to consider adequately the opinions of her treating psychiatrist, Dr. Murthy.[2] As discussed below, this claim does not

---

n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

[2] Plaintiff also argues that the ALJ's comment that Dr. Murthy's opinion was "egregiously limited, what is usually seen from this doctor," reflects bias on the part of the ALJ. [JS 3-4.] However, to succeed in a bias claim, the plaintiff must demonstrate that the ALJ's behavior, in the context of the whole case, was "so extreme as to display clear inability to render fair judgment." Bayliss v. Barnhart, 427 F.3d 1211, 1214-15 (9th Cir. 2005)(quoting Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001)). Here, the ALJ's brief, isolated comment about Dr. Murthy may have been unnecessary, but it clearly does not meet this standard.

warrant reversal.

**D.  THE ALJ ADEQUATELY CONSIDERED THE TREATING PSYCHIATRIST'S OPINION**

Ninth Circuit cases distinguish among the opinions of three types of physicians: those who treat the claimant (treating physicians), those who examine but do not treat the claimant (examining or consultative physicians), and those who neither examine nor treat the claimant (non-examining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(citations omitted). "The opinion of the treating physician, however, is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751; Rodriquez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).

" 'An administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick, 157 F.3d at 725 (quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1984))(quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. See also Benecke v. Barnhart, 379 F.3d 587, 591 & n.1 (9th Cir. 2004).

Here, plaintiff received psychiatric treatment from Dr. Krishna

Murthy from March to September 2002 and again from December 2002 to March 2003. [AR 268, 297, 340, 355.]  During the treatment sessions, Dr. Murthy noted that plaintiff had a history of major depression and difficulty coping with her medical problems. [AR 275, 281, 346.]  In September 2002, Dr. Murthy completed a Residual Psychiatric Disability form that concluded that plaintiff had several "moderate" work-related limitations (such as an impairment in her ability to relate to others) and that her impairments would last twelve months or longer. [AR 266-267.]  Six months later, in March 2003, Dr. Murthy similarly concluded in a Work Capacity Evaluation (Mental) form that plaintiff had several "moderate" or "marked" limitations that would last at least twelve months. [AR 362.]  In June 2003, Dr. Murthy wrote a letter stating that plaintiff "suffers from major depressive disorder including anxiety, depression, feelings of hopelessness and helplessness, tearfulness and confusion." [AR 357.]

In assessing plaintiff's mental RFC, however, the ALJ rejected Dr. Murthy's opinion, finding it unsupported by Dr. Murthy's own mental health reports and minimal treatment. [AR 17.]  The ALJ also found that plaintiff had received only "routine outpatient treatment for a depressive disorder...[that did] not reflect any acute mental health crisis requiring inpatient hospitalization or intensive treatment." [AR 17.]  In rejecting Dr. Murthy's opinion, the ALJ adopted the contrary opinions of an examining psychiatrist and two state agency review psychiatrists, who each concluded that plaintiff was not mentally incapacitated from working. [AR 17.]

Under the circumstances here, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to decline to credit Dr. Murthy's opinion.  The record indicates that

plaintiff saw Dr. Murthy approximately once per month (over a period of less than one year) for fifteen to twenty minutes per session, which supports the ALJ's characterization of the treatment as "minimal."  The record does not indicate that plaintiff received inpatient or intensive treatment for her depression.  Dr. Murthy's treatment notes, while recognizing plaintiff's history of depression and poor coping skills, do not provide a sufficient foundation for Dr. Murthy's subsequent conclusion that plaintiff had several "moderate" or "marked" limitations that would prevent her from working.  See Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003)(holding that a treating doctor's opinion regarding patient's RFC can be discounted if it is unsupported by doctor's own treatment notes).  The letter and two mental capacity evaluations completed by Dr. Murthy are brief and contain no explanation for their ultimate conclusions. [AR 266-267, 375, 362.]  An ALJ may discredit a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004)(citing Tonapetyan, 242 F.3d at 1149).

   Furthermore, sessions with a therapist at the Barstow Counseling & Behavioral Health Center (where plaintiff was concurrently seeing Dr. Murthy) indicate that plaintiff was making steady progress.  The therapist observed that plaintiff was "more upbeat," "less tearful," and making "improvements...in socialization, mood and activity level." [AR 272, 276, 282.]  In July 2002, plaintiff's mental health services were terminated, upon the recommendation of the therapist, because plaintiff was not expected to benefit or had reached maximum benefit from the services. [AR 271.]  Although plaintiff briefly resumed

treatment with Dr. Murthy in January 2003, this does not alter the conclusion that Dr. Murthy's opinion regarding plaintiff's limitations is not supported by the rest of the record. [AR 352.]

Finally, an examining psychiatrist and two state agency review psychiatrists opined that plaintiff was not mentally incapacitated from working. [AR 17.] In October 2001, Dr. Ernest Bagner, the examining psychiatrist, observed that plaintiff was tearful and reported depression, low energy, helplessness and hopelessness, but ultimately concluded that plaintiff would "most likely be able to interact with a supervisor, peers, and the public...[and] be able to attend work on a regular basis."[3] [AR 194.] Shortly thereafter, in November 2001, Dr. K. Gregg, a state agency review psychiatrist, concluded that plaintiff had the mental RFC to "sustain simple repetitive tasks with adequate pace and persistence...[and] adapt and relate to coworkers and [supervisors]" but that plaintiff could not work with the public. [AR 197.] Almost one year later, in October 2002, Dr. Michael Skopec, another state agency review psychiatrist, agreed with Dr. Gregg's report.[4] [AR 313.] Based on the opinions of Drs. Bagner, Gregg and Skopec, the ALJ concluded that plaintiff was mentally capable of performing a significant range of light work,

---

[3] Dr. Bagner assessed a Global Assessment of Functioning ("GAF") score of 68 in October 2001, which indicates greater functioning than the GAF of 45 that Dr. Murthy assessed when he first met plaintiff in March 2002.

[4] A third state agency review psychiatrist, Dr. Joseph Hartman, considered Dr. Murthy's opinion that plaintiff had several "moderate" limitations but still agreed with Dr. Gregg's mental RFC assessment. [AR 312.]

specifically, jobs comprised of routine, repetitive, nonpublic tasks.[5] [AR 15.]  Because the opinions of the examining psychiatrist and state agency review psychiatrists collectively comprised substantial evidence, such a conclusion was warranted.  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997)(reports of a consultative examining physician may serve as substantial evidence); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002)(opinion of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with clinical findings or other evidence in the record).  Accordingly, the ALJ's decision to decline to credit Dr. Murthy's opinion must stand.

## VI.  ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.

2. This action is **DISMISSED WITH PREJUDICE**.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: November 28, 2005

                                        ___/s/_____
                                          CARLA M. WOEHRLE
                                        United States Magistrate Judge

---

[5]  Based on the ALJ's physical and mental RFC determinations, the vocational expert testified that plaintiff was capable of performing light, unskilled jobs such as garment ticketer, packer and sewing machine operator. [AR 33.]

10